## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN CIVIL LIBERTIES UNION** ) | |
| 915 15th Street, N.W., 7th Floor ) | |
| Washington, DC 20005, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | |
| **DEPARTMENT OF HOMELAND SECURITY** ) | |
| 245 Murray Lane, S.W. ) | |
| Washington, DC 20528, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

(1)  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202.   Plaintiff seeks injunctive and declaratory relief to compel defendant Department of Homeland Security to disclose requested records.

## Jurisdiction and Venue

(2)  This court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B).  This court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201(a) & 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## The Parties

(3)  Plaintiff American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization dedicated to protecting human rights and civil rights in the United

States.  It is the largest civil liberties organization in the country, with offices in 50 states and over 1 million members. The ACLU is dedicated to holding the United States government accountable with respect to the rights of prisoners guaranteed by the U.S. Constitution and by universal human rights principles.  Although the ACLU has been involved in prison reform for more than half a century, in 1972 the organization consolidated its various prisoners' rights efforts around the United States into the National Prison Project ("NPP").  The NPP promotes a fair and effective criminal justice system in which incarceration is used only as a last resort, with the purpose of preparing prisoners for release and a productive, law-abiding life at the earliest possible time. Through litigation, advocacy, and public education, the NPP works to ensure that conditions of confinement are consistent with health, safety, and human dignity, and that prisoners retain all rights of free persons that are not inconsistent with incarceration.  In the context of immigration detention, NPP carries out similar work to secure humane, dignified conditions of confinement and to improve transparency and access to detainees and detention facilities. The NPP's current docket includes class action civil rights suits on behalf of prisoners and immigration detainees in seven states and the U.S. Virgin Islands.

(4)  Defendant Department of Homeland Security ("DHS") is a department of the executive branch of the United States Government and includes U.S. Immigration and Customs and Enforcement ("ICE") among its components.  DHS is an "agency" within the meaning of 5 U.S.C. § 552(f).

### Background

(5)  For many years, advocates for social change have used hunger strikes as a form of nonviolent protest.  This includes such luminaries as Mahatma Gandhi, Nelson Mandela, and Cesar Chavez.  The modern-day immigrants' rights movement is no exception.  In recent years,

hunger strikes have roiled immigration detention facilities in many states, including Arizona, Florida, Georgia, Louisiana, Oregon, Texas, and Washington.  Often, these protesters have sought to call attention to lack of access to bond hearings and inhumane conditions of confinement.  The ACLU is aware of various times when the authorities have met these protests with extraordinarily punitive responses.  At the Northwest Detention Center in Tacoma, Washington, for example, detainees were thrown into solitary confinement in 2014 for these protests.  The ACLU of Washington and Columbia Legal Services sued ICE to remove these detainees from solitary confinement.  At the T. Don Hutto Residential Center in Taylor, Texas, an internal policy characterized refusing to eat as "protesting in a passive aggressive manner" and authorized revocation of radio, visitation, and telephone access in response to such protests.

(6)  This lawsuit seeks various records related to hunger strikes and other refusals to eat, including both policies and records generated in response to individual refusals.  This information is of especially great public interest.  In recent weeks, new hunger strikes have already begun in Georgia, Oregon, and Washington.  Additionally, the Trump administration's plans to expand detention and strip away existing structures for oversight of detention are likely to produce more protests both inside and outside the walls of detention facilities.

**Plaintiff's FOIA Request and Defendant's Response**

(7)  By letter to ICE dated August 23, 2016, plaintiff requested under the FOIA copies of agency records.  Specifically, plaintiff requested records pertaining to ICE's policies and practices with respect to hunger strikes and other refusals to eat.  Plaintiff specified that it sought records "from September 4, 2013 to the present," and described the records requested as follows:

> 1. IHSC ("ICE Health Service Corps") Directive 03-24, ERO Directive 11758.1, and any and all other IHSC or ERO ("ICE Enforcement and Removal Operations") directives regarding the identification, care, and/or management of DETAINEES who are on a hunger strike, food strike, refusal to eat, and/or other

refusal to participate in meal service.  This includes all versions of such directives that are or were in effect during the request period, as well as any updates, amendments, or attachments thereto.

2. Any and all policies relating to hunger strikes, food strikes, refusals to eat, and/or other refusal to participate in meal service that are or were in effect during the request period at any and all Contract Detention Facilities, Service Processing Facilities, Family Residential Facilities, or Dedicated Inter-Governmental Service Agreement (IGSA) Facilities.

3. Any and all DOCUMENTS, including but not limited to Powerpoint presentations and handouts, displayed or distributed to IHSC field staff in connection with any training provided pursuant to section 4-11 of IHSC Directive 03-24.

4. Databases, spreadsheets, lists, and other DATA COMPILATIONS that contain lists of any of the following during the request period or any part thereof:

      a. Hunger strikes;
      b. Food strikes;
      c. Refusals to eat; or
      d. Other refusals to participate in meal service.

5. Databases, spreadsheets, lists, and other DATA COMPILATIONS that identify whether DETENTION FACILITIES are equipped or are not equipped with a Medical Housing Unit, as the term is used in IHSC Directive 03-24.2.

6. Any and all DOCUMENTS and COMMUNICATIONS notifying ICE ERO, ICE IHSC Medical Quality Management Unit, ICE IHSC Field Medical Coordinators, or ICE Field Office Directors of (a) hunger strikes or events related to hunger strikes (including but not limited to the initiation or discontinuation of a hunger strike), (b) DETAINEES who have not eaten food for 72 hours, (c) DETAINEES who have not eaten food for one or more meals, (d) and/or DETAINEES who have declared a hunger strike or other organized food refusal.

7. Any and all completed IHSC-010 Incident Reporting Documents regarding (a) hunger strikes or events related to hunger strikes or other organized food refusals (including but not limited to the initiation or discontinuation of a hunger strike), (b) DETAINEES who have not eaten food for 72 hours, (c) and/or DETAINEES who have declared a hunger strike or other organized food refusal.

8. Any and all SEN ("Significant Event Notification") DOCUMENTS and SEN COMMUNICATIONS regarding (a) hunger strikes or events related to hunger strikes (including but not limited to the initiation or discontinuation of a hunger strike), (b) DETAINEES who have not eaten food for 72 hours, (c) and/or DETAINEES who have declared a hunger strike or other organized food refusal.

9. Any and all motions, briefs, petitions, or other DOCUMENTS filed in state or federal court seeking authorization for involuntary medical treatment of (a) DETAINEES who are on a hunger strike, (b) DETAINEES who have not eaten food for 72 hours, (c) and/or DETAINEES who have declared a hunger strike or other organized food refusal.

10. Any and all court orders granting or denying authorization for involuntary medical treatment of (a) DETAINEES who are on a hunger strike, (b) DETAINEES who have not eaten food for 72 hours, (c) and/or DETAINEES who have declared a hunger strike or other organized food refusal.

(8)  In its letter to defendant dated August 23, 2016, plaintiff requested a waiver of any search, review, or duplication fees associated with its FOIA request pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k).  Plaintiff further noted that the ACLU qualifies as a "representative of the news media" and that the records were not being sought for commercial use.  Accordingly, plaintiff stated that any fees assessed for the processing of its requests should be "limited to reasonable standard charges for document duplication" pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 6 C.F.R. § 5.11(d).

(9)  In its letter to defendant dated August 23, 2016, plaintiff requested expedited treatment of its FOIA request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d).  In support of its request for expedited treatment, plaintiff stated that "[t]here exists a clear 'urgency to inform the public concerning actual or alleged Federal Government activity,' and the ACLU is 'primarily engaged in dissemination of information.'"

(10)  By email message to plaintiff dated September 2, 2016, ICE acknowledged receipt of plaintiff's FOIA request and assigned it "ICE FOIA Case Number 2016-ICFO-55104."  ICE further advised plaintiff that plaintiff's request for a waiver of processing fees was granted, but that plaintiff's request for expedited treatment of its request was denied.

(11)  By letter to plaintiff dated September 19, 2016, ICE responded to plaintiff's FOIA request.  ICE asserted that "[a] search of the ICE Office of Enforcement and Removal Operations (ERO) for records responsive to your request produced 18 pages that are responsive to your request" and that "portions of 18 pages will be withheld" as exempt from disclosure.  ICE advised plaintiff of its right to appeal that determination to the agency's Office of the Principal Legal Advisor.

(12)  By letter to the Office of the Principal Legal Advisor dated November 7, 2016, plaintiff appealed ICE's determination that only 18 pages of agency records were responsive to plaintiff's FOIA request.  Plaintiff asserted, *inter alia*, that "it is clear that ICE did not provide a vast majority of what was requested by the ACLU, and that the 18 pages that ICE identified as responsive were the product of a grossly underinclusive search for documents."

(13)  By letter to plaintiff dated December 15, 2016, ICE's Office of the Principal Legal Advisor responded to plaintiff's FOIA appeal.  The agency informed plaintiff that "[a]fter reviewing the administrative record, ICE has determined that a new search(s), could be made," and that "ICE is therefore remanding your appeal to the ICE FOIA Office for processing and re-tasking to the appropriate agency/office(s) to obtain any responsive documents."

(14)  By letter to the Office of the Principal Legal Advisor dated April 11, 2017, plaintiff appealed ICE's denial of plaintiff's request for expedited treatment of its FOIA request dated August 23, 2016.  According to tracking information provided by the U.S. Postal Service, plaintiff's appeal letter dated April 11, 2017, was received by the Office of the Principal Legal Advisor on April 17, 2017.

(15)  To date, plaintiff has not received a final determination of its FOIA request dated August 23, 2016, notwithstanding the agency's "remand" of the request for "processing and re-

tasking." Nor has plaintiff received a response to its appeal of the agency's denial of its request for expedited treatment of its FOIA request.

## CAUSE OF ACTION

### Violation of the Freedom of Information Act for
### Wrongful Withholding of Agency Records

(16)  Plaintiff has exhausted the applicable and available administrative remedies with respect to defendant's processing of plaintiff's FOIA request and administrative appeal.

(17)  Defendant has wrongfully withheld the requested records from plaintiff by failing to comply with the statutory time limit for rendering a determination or response to plaintiff's FOIA request and administrative appeal.

(18)  Plaintiff is entitled to injunctive and declaratory relief with respect to the release and disclosure of the requested documents.

### Requested Relief

WHEREFORE, plaintiff prays that this Court:

A.  Order defendant Department of Homeland Security and its component, ICE, to disclose all non-exempt records responsive to plaintiff's FOIA request immediately, with all processing fees waived;

B.  Issue a declaration that plaintiff is entitled to disclosure of the requested records;

C.  Award plaintiff its costs and reasonable attorneys fees incurred in this action; and

D.  Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

DAVID L. SOBEL, D.C. Bar No. 360418
5335 Wisconsin Avenue, N.W., Suite 640
Washington, DC 20015

(202) 246-6180

CARL TAKEI, D.C. Bar No. 987672
VICTORIA LOPEZ*
AMERICAN CIVIL LIBERTIES UNION
  NATIONAL PRISON PROJECT
915 15th Street, N.W., 7th Floor
Washington, DC 20005
(202) 393-4930

*Not admitted in DC; practice limited to
    federal courts.

ARTHUR B. SPITZER, D.C. Bar No. 235960
American Civil Liberties Union
  of the District of Columbia
4301 Connecticut Avenue, N.W., Suite 434
Washington, D.C. 20008
(202) 457-0800

*Counsel for Plaintiff*